

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

LINDA STURM               :     NO.: 3:03CV0666 (AWT)

                      :

v.                      :

                      :

ROCKY HILL BOARD OF EDUCATION  :     FEBRUARY 4, 2004

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS RULE 12 (b)(6) MOTION TO DISMISS

## I.    BACKGROUND

This case arises from the defendant's, Rocky Hill Board of Education, refusal to renew to the plaintiff's, Linda Sturm, teaching contract. Plaintiff alleges that her non-renewal stemmed from illegal animus, in violation of the Rehabilitation Act, and violated her First Amendment rights of free speech. Plaintiff also claims that two colleagues defamed her following her non-renewal. She seeks to hold the Board of Education vicariously liable at common law.

Plaintiff alleges the following key facts. She first began to work for Rocky Hill in September 1998 as a Special Education Resource teacher. She was assigned to Griswold Middle School. (Pl.Comp. ¶ 6). At the time of her employment, the defendant had instituted a program in its school district, termed BRACES (Behavior, Rewards, Achievement, Consequences, Encouragement and Support). BRACES was designed to meet the special education needs of certain students who were deemed to have met the program's requirements. (Pl.Comp. ¶ 11). BRACES was intended to specifically address student behavior problems, such as "disrespectfulness,

inappropriate language, and refusal to do school work". (Pl.Comp. ¶ 10). Nancy Love was assigned as the Program Coordinator of BRACES. (Pl.Comp. ¶ 10).

During the 1999-2000 school year, Cori Marino became the principal of Griswold. (Pl.Comp. ¶ 8). The plaintiff alleges that she "advocated" that certain students be placed into the BRACES program. (Pl.Comp. ¶ 12). Within her complaint, the plaintiff documents nine (9) instances during which she recommended that certain students, displaying various behavioral problems, be placed into the BRACES program. (Pl.Comp. ¶¶ 14-24). These instances include Ms. Sturm's recommendation that : (1) a female student be placed into the program due to emotional problems (Pl.Comp. ¶ 14); (2) a male student be placed in the program due to his "organizational and academic needs" (Pl.Comp. ¶ 15); (3) a male student with Pervasive Developmental Disorder, Attention Deficit Hyperactivity Disorder (AHDH), Generalized Anxiety Disorder and a phonological processing disorder be placed into the program (Pl.Comp. ¶ 16); (4) a male student with "behavioral problems" be placed into the program (Pl.Comp. ¶ 17); (5) a male student identified as "high risk" be placed into the program (Pl.Comp. ¶ 18); (6) a male student with "severe anger and emotional issues" be placed into the program (Pl.Comp. ¶ 19); (7) a male student who suffered from School Phobia be placed into the program (Pl.Comp. ¶ 20); and (8) a male student identified as Passive Oppositionality and ADHD, who suffered from "severe anger, self-control issues and a learning disability", be placed in the program (Pl.Comp. ¶ 21). The plaintiff claims that despite these recommendations, Ms. Love and Ms. Marino "continuously refused (her) repeated requests for placement into the BRACES program". (Pl.Comp. ¶ 13).

Specifically, in reference to the ninth instance, the plaintiff advocated that a student, referred to as "Jane Doe", be admitted into the BRACES program due to her "refusal to do homework and other behavioral problems." (Pl.Comp. ¶ 22). The

plaintiff's recommendation was made at Jane Doe's Planning and Placement Team Meeting ("PPT"), a meeting held at least once a year, during which the student's goals and objectives were discussed with her family. (Pl.Comp. ¶ 22). Ms. Love, the BRACES coordinator, was not present at this meeting. (Pl.Comp. ¶ 22). Subsequently, the plaintiff had a meeting with Ms. Marino and Ms. Love concerning Jane Doe. The plaintiff claims that Ms. Love and Ms. Marino accused the plaintiff of "going behind their backs" by recommending that Jane Doe be placed in a mainstream reading class. (Pl.Comp. ¶ 23). The plaintiff states that Ms. Love wanted, instead, to move Jane Doe out of the BRACES class-period, and into a social studies class. (Pl.Comp. ¶ 23). Debate over Jane Doe continued, when the School Psychologist, Ted Dorrington, suggested that Jane Doe be removed from BRACES, and that another student, John Doe, take her place. The plaintiff refused the proposed "trade", and John Doe was placed into her special education classroom. (Pl.Comp. ¶ 24).

In December of 2001, the plaintiff approached Ms. Marino, the principal, regarding four female students in her class. She stated that the students were "troublesome", and requested that they be separated. Ms. Marino dismissed the plaintiff's concerns as "non-issue", and did not separate the students. (Pl.Comp. ¶ 25).

In January of 2002, the plaintiff had a meeting with Ms. Marino, the principal, and with Ruth Young, who was in charge of the defendant's Special Education program. (Pl.Comp. ¶ 26). During this meeting, the plaintiff claims that Ms. Marino accused her of being "sneaky" in recommending counseling sessions at a student's PPT; of being negligent in her education of two students; of failing to attend students' PPT meetings; and of having conflicts with her colleagues. (Pl.Comp. ¶ 26).

A meeting was held to review the plaintiff's end of the year evaluation on or around March 12, 2002. The evaluation stated that the plaintiff had "conflicts with her colleagues that required administrative intervention." (Pl.Comp. ¶ 28). On March 15,

3

2002, Ms. Marino informed the plaintiff that her contract would not be renewed.  Ms. Marino also told the plaintiff that she was not a "good fit" with the team Ms. Marino was trying to build at Griswold.  (Pl.Comp. ¶ 29).  Ms. Marino also informed the plaintiff that she would not be able to transfer to another school within the district.  (Pl.Comp. ¶ 29).

In February 2003, the plaintiff interviewed for a part-time position as a special education teacher at Glastonbury School District.  (Pl.Comp. ¶ 31).  After the interview, Mr. Russo, a principal in the Glastonbury School District, told the plaintiff that he would contact her references.[1]  (Pl.Comp. ¶ 47).  Mr. Russo spoke to Ms. Young, who was in charge of the defendant's Special Education program, and with Carey Miller, who worked as a principal for the defendant.  In response to a question asked by Mr. Russo, both Ms. Young and Ms. Miller responded that the defendant would not rehire the plaintiff.  (Pl.Comp. ¶¶ 48, 49).

The plaintiff now brings suit against the municipal entity, the Rocky Hill Board of Education, in five separate counts.  In her First Count, brought pursuant to 42 U.S.C. § 1983, the plaintiff claims that her First Amendment rights were violated when the defendant refused to renew her contract in retaliation for her "advocacy for her students with Special Education needs."  The plaintiff's Second Count is identical to her First, excepting that it is brought pursuant to Connecticut General Statutes § 31-51q, and invokes those provisions of the Connecticut state constitution which correspond to the First Amendment.  Plaintiff's Third Count is brought under § 504 of the Rehabilitation Act.  The Plaintiff's Fourth Count alleges a common law action of defamation.  And, the plaintiff's Fifth Count sets forth a claim of wrongful discharge.  The defendant now moves to dismiss all counts, because assuming all factual allegations as true, plaintiff fails to state a claim upon which relief may be granted.

---

[1] The complaint is silent as to whether or not plaintiff objected to such inquiry.  This is strange, because plaintiff's later reference to a violation of Conn. Gen/ Stat 31-128 implies that she objected to Mr. Russo speaking to her references.

## II.    **STANDARD OF REVIEW**

A motion to dismiss under Rule 12(b)(6) admits the well-pleaded allegations of the complaint, but denies their legal sufficiency. Hosp.Bldg. Co. v. Trs. of the Rex Hosp., 425 U.S. 738, 740 (1976). In considering a Rule 12(b)(6) motion the Court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor. See Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College, 128 F.3d 59 (2d Cir. 1997). It is the Court's task to test the legal sufficiency of the complaint and not to judge the credibility of the pleadings or to assess the weight of any evidence offered in support of the action. See Cooper v. Parsky, 140 F.3d 433 (2d Cir. 1998). A claim should be dismissed where it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle plaintiff to relief. See Morris v. Local 819, Int'l Bhd. of Teamsters, 169 F.3d 782, 784 (2d Cir. 1999).

"The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiff['s] cause of action." Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." Ramadan v. Chase Manhattan Corp., 229 F.3d 194, 195-96 (3d Cir. 2000) (citing Alexander v. Whitman, 114 F.3d 1392, 1398 (3d Cir. 1997)). "The issue [under Rule 12(b)(6)] is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000) (citations and internal quotation marks omitted). "In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be

inferred." Behm v. Luzerne County Children & Youth Policy Makers, 172 F. Supp.2d
575, 580 (M.D. Pa. 2001) (citing Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)).


III.    **LEGAL ARGUMENT**

   A. **The Plaintiff Has Failed To Set Forth A Claim Under The First
      Amendment, Pursuant to Section 1983.**

   1.    **The Plaintiff's speech is not entitled to First Amendment protection,
         as it does not entail a matter of public concern.**

        In the First Count of her complaint, the plaintiff claims that her First
Amendment Rights under Section 1983 were violated when the defendant refused to
renew her teaching contract, allegedly in retaliation for her "advocacy for her students
with Special Education needs". (Pl.Comp. ¶ 37). The plaintiff identifies the alleged First
Amendment protected speech as consisting of her recommendations that certain
students be placed into, or moved out of BRACES classes. Specifically, within the
body of her complaint, the plaintiff sets forth nine (9) instances in which she
recommended a student for placement in the BRACES program.  She alleges that
other teachers and administrators at the Griswold Middle School did not initially agree
with or take her recommendations. In particular, the plaintiff alleges that there was a
disagreement over the placement of one student, identified as 'Jane Doe'.  The plaintiff
claims that both Griswold's principal, Ms. Marino, and the program coordinator of
BRACES, Ms. Love, accused her of "going behind their backs", when she
recommended Jane Doe's placement in the program at a PPT meeting.
        The plaintiff now attempts to bring a First Amendment claim under Section
1983, on the theory that her contract was not renewed in retaliation for her
Constitutionally protected speech.  However, plaintiff's claim fails as a matter of law,

because issues of public concern were not addressed in her commentary. The plaintiff's speech merely involves her professional recommendations as to certain students' placement in educational programs.  Furthermore, such speech, by the very nature of its content, and as defined by statute, cannot constitute a "public concern" as it involves confidential student information, and may not be transmitted or in any way communicated to the public. The plaintiff's allegations merely concern her personal grievances concerning matters of internal policy.  In effect the plaintiff is attempting to cloak her professional and personal grievances with her co-workers and supervisors under the guise of a First Amendment claim.  The plaintiff's speech does not merit First Amendment protection.

      **a.   The context and form of the plaintiff's speech may not be characterized as raising a "public concern".**

The  seminal case of <u>Pickering v. Board of Education</u>, 391 U.S. 563 (1968) established the general standard that while public employees retain First Amendment rights, those rights are limited by the government's need to effectively perform services.  <u>Pickering</u> held that the speech of a public teacher is protected by the First Amendment only where such speech addresses matters touching on a "public concern".  Subsequent case law has specifically defined what constitutes "public concern" speech:  Speech by a public employee is on a matter of public concern if it relates "to any matter of political, social, or other concern to the community." <u>Johnson v. Ganim</u>, 342 F.3d 105, 112 (2nd Cir. 2003); citing to <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983); <u>Garcia v. State Univ. of N.Y. Health Sci. Ctr.</u>, 280 F.3d 98, 105 (2d Cir. 2001).  "The content of speech may involve a matter of public concern if it attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of

government officials." Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993).
"In this respect, we focus on the content, form, and context of the activity in question."
Connick v. Myers, at 147-48.

"The question of whether certain speech enjoys a protected status under the
First Amendment is one of law, not fact." Morris v. Lindau, 196 F.3d 102, 110 (2nd Cir.
1999). See also Connick v. Myers, 461 U.S. 138, 148 n. 7 (1983); Dodds v. Childers,
933 F.2d 271(5th Cir. 1991) (attached). "A public employee's speech is entitled to
judicial protection under the First Amendment only if it addresses a matter of public
concern. This must be determined by the content, form, and context of a given
statement... If the speech does not address a matter of public concern, a court will not
scrutinize the reasons motivating a discharge that was allegedly in retaliation for that
speech." Dodds (attached).

The Supreme Court decision in Connick v. Myers, 461 U.S. 138 (1983), has
established the applicable method of analysis. "Whether an employee's speech
addresses a matter of public concern must be determined by the content, form, and
context of a given statement..." Connick at 147-48. Accordingly, "[i]t is not sufficient
that the topic of the speech be of general interest to the public; in addition what is
actually said must meet the public concern threshold." Schalk v. Gallemore, 906 F.2d
491, 495 (10th Cir. 1990). "In order for a public employee's speech to be of public
concern, it is not always enough that its subject matter could in certain circumstances
be the topic of a communication to the public that might be of general interest. **What
is actually said on that topic must itself be of public concern**." Wilson v. City of
Littleton, 732 F.2d 765, 769 (10th Cir. 1984); citing to Connick, at 148 n. 8. (Emphasis
provided). "Whether an employee's speech addresses a matter of public concern is a
question of law for the court to decide, taking into account the content, form, and
context of a given statement as revealed by the whole record." Connick at 147-148.

8

The general contours of the Connick analysis focus on the intended audience of the speech in question. "The underlying substantive question is whether the particular speech at issue constitutes the employee's own personal expression, *intended as a public comment on a matter of public interest*, rather than a mere articulation of an employer's position or speech *directed by a private grievance*." Bonds v. Milwaukee County, 207 F.3d 969, 980 (7th Cir. 2000) (emphasis supplied). In other words, speech merely representative of a private grievance between the public employee and other public employees and/or administrators, does not rise to the level of "public concern", as it is not intended as a public broadcast within a public forum. Whether or not the topic of the speech would constitute a 'public interest' is irrelevant to Connick's analysis.

For example, the Court in Connick was particularly persuaded where it found that the plaintiff did not "*seek to bring to light* actual or potential wrongdoing or breach of the public trust on the part of Connick or others…", but instead, the plaintiff's speech merely reflected, "one employee's dissatisfaction with a transfer [of employment] and an attempt to turn that displeasure into a cause celebre." Connick at 148. (Emphasis provided).

Court's have consistently followed Connick's analysis of the context of the disputed speech. "Of course, simply because a topic might be of some interest to the public does not automatically mean that an employee's statements on that topic address a matter of public concern as that term is employed in Connick." Kokkinis, 185 F.3d at 844. "The court must consider whether the speaker's point was to bring wrongdoing to light or to raise other issues of public concern… or to further a purely private interest." Vukadinovich v. Bartels, 853 F.2d 1387, 1390-91 (7th Cir. 1988); see also Hesse v. Board of Education, 848 F.2d 748, 752 (7th Cir. 1988) (memoranda from teacher to school board indicated that he was not attempting to speak on matter of

public concern, but was expressing his private disagreement with policies and procedures that he had either failed to apply or refused to follow.)

The plaintiff's speech in the present case does not meet Connick's scrutiny. The speech in dispute, as set forth *in detail* in the complaint, was not broadcast to the public. The disputed speech was not intended to bring wrongdoing or other issues of public concern to light. The intended target of the disputed speech was not a public audience. Rather, the plaintiff was merely voicing, in private and amongst her fellow teachers and school administrators, her disagreement with the choice of placement of certain students in an educational program. Such statements did not raise a "public concern", and do not fall under the protection of the First Amendment. Connick at 148.

### b. The content of the plaintiff's speech involves confidential information, protected by statute.

Regardless, the plaintiff may not characterize the disputed speech as raising a "public concern", as its content, by its very nature, and as defined by statute, is confidential. As stated above, the disputed speech involves the recommendation of certain students for the BRACES program. As such, these recommendations involve individual assessments of each students' respective academic capabilities, as well as behavioral difficulties observed in the classroom. Such information is confidential, and is protected by the Buckley Amendment to the General Education Provisions Act, 20 U.S.C. § 1232g. This information may not be released to the public without the consent of the student and/or his/her family. Healy v. James, 445 F.2d 112, 1136 (2nd Cir. 1971).

The very content of the disputed speech in the present matter reveals that such speech is not protected under the First Amendment, or under the corresponding

provisions of the Connecticut State Constitution.  First Amendment protected speech only involves speech that may be characterized: "public concern".  The disputed speech in the present matter is confidential, involving highly private information as to students' behavior, emotional disturbances, and academic achievements.  Even the plaintiff is cognizant of the private and confidential content of this speech, as she does not identify the students by name, but instead appoints them anonymous appellations, such as "Jane Doe" and "a male student".  Such speech could never qualify as "public concern", as by law it could not be broadcast to the public.

     **c.   The plaintiff is not speaking as a citizen upon a matter of public concern, but rather as an employee, voicing a personal grievance.**

The <u>Connick</u> analysis also calls for courts to examine the position, relative to society, that the plaintiff is assuming when making the disputed speech.  "We hold only that when a public employee speaks not as *a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest*, absent the most unusual circumstances, a federal court is not the appropriate forum…" <u>Connick</u> at 147. (Emphasis provided).  "[T]he employee must speak as a citizen upon matters of public concern, not simply as an employee upon matters only of personal interest." <u>Pappas v. Giuliani</u>, 290 F.3d 143, 152 (2nd Cir. 2002).  "This court has previously found that issues rise to the level of public concern if an individual speaks primarily as a citizen rather than as an employee… an employee cannot transform a personal conflict into an issue of public concern simply by arguing that individual concerns might have been of interest to the public under different circumstances." <u>Dodds</u> (attached).

Specifically, in the context of public education, courts examine whether the aggrieved employee's disputed speech was intended to voice a public criticism of the administration of the school, or whether such speech merely arose out of an employer-employee relationship. For example, in Roberts v. Van Buren Public Schools, 773 F.2d 949 (8th Cir. 1985) the Court held that the disputed speech, entailing complaints made by the plaintiff-teachers to the principal about the principal's lack of clarity concerning the changes he expected the plaintiffs to make, "***went more to the relationship between (the principal) and the teachers as supervisor and employees*** rather than to the discharge by (the principal) and the school of their public function of education." Roberts at 956. (Emphasis provided).

Accordingly, courts have also ruled that disputes amongst public school employees over the internal application and/or administration of internal policies do not rise to the level of 'public concern' speech. The rationale behind this rule is that such speech arises out of the personal, supervisor-employee relationship between the plaintiff and defendant. "Following the Supreme Court's distinction in Connick between subjects of private and public interest, courts have found speech that concerns internal administration of the educational system and personal grievances will not receive constitutional protection." Maples v. Martin, 858 F.2d 1546, 1552 (11th Cir.1988). "[T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." Connick at 149 (where Court held that plaintiffs' speech was "most accurately characterized as an employee grievance concerning internal office policy", Id. at 154).

Furthermore, in Ballard v. Blount, 581 F.Supp. 160 (N.D. Ga. 1983), the district court held that the plaintiff's critical comments regarding his course assignments, a proposed course syllabus, and tenure decisions involved, "matters relating to internal college affairs rather than to matters of political or social import –

12

matters of public concern." Ballard at 164. See also Hesse v. Bd. Of Educ. Of Township High School Dist. No. 21, 848 F.2d 748, 752 (7th Cir. 1988) (memoranda discussing teaching methods and criteria of evaluation are unprotected speech).

The facts of Dixon v. Board of Education of Albuquerque (N.M. 2002) (attached) are comparable to those of the present case. In Dixon, the plaintiff, the principal of the New Futures School ('NFS'), brought suit against the board of education, alleging that her transfer to a lower position was in retaliation for her protected speech. Specifically, she claimed that the alleged retaliation was in response to her speaking out on financial irregularities within NFS, in particular concerning employees' salaries. The defendant board of education then moved to dismiss or in the alternative for summary judgment on the retaliation claim.

The Dixon Court noted that "speech concerning individual personnel disputes or internal policies typically will not involve public concern." Dixon (attached); citing to Curtis v. Oklahoma City Pub. Sch. Board of Educ., 147 F.3d 1200, 1212 (10th Cir. 1998). The court also noted that investigating the school's finances was part of Dixon's duties as principal. The Dixon court then held:

> "[p]laintiff would have the Court designate statements made in connection with her job duties as protected speech simply because the speech interfaced with irregularities in the use of public funds. While the nature of her work does not preclude the Plaintiff from asserting speech that could be considered protected under the First Amendment, neither does it grant her a free pass to First Amendment protection...Thus, Plaintiff's request for an independent audit of the financial relationship between NFS and New Futures Inc. shortly after she was hired as principal in 1992 cannot be considered protected speech, **but Plaintiff carrying out the directive** to look into financial irregularities at the school." Dixon (attached). (Emphasis provided).

See also Cahill et al. v. O'Donnell et al., 75 F.Supp.2d 264, 273 (S.D.N.Y. 1999) (speech that was, in a general way, a matter of public concern, was not protected

13

where Internal Affairs personnel "simply exercised their duties… to investigate allegedly improper occurrences within the State Police, and to report their findings as requested").

Like wise, in the present case, the plaintiff's speech purely involves matters of internal administration.  The plaintiff's speech represents her personal disagreement with other Griswold teachers and administrators as to whether certain students should be placed in an educational program.  Specifically, the plaintiff's speech involves her evaluation of specific students in accordance with certain criteria laid out in the BRACES program.  Recommendation as to placement in academic programs was part and parcel of the plaintiff's duties as an educator. The plaintiff was not speaking as a concerned citizen to a public forum.  Rather, she was speaking in private, in the context of her professional relationship as a teacher to her supervisor and to her fellow administrators and/or educators. In the present suit, the plaintiff's speech is "most accurately characterized as an employee grievance concerning internal office policy".  Connick at 154.  It does not merit First Amendment protection.

### d.    The plaintiff's speech was not engendered by a motive to raise a public concern.

Courts also examine the motive behind the disputed speech.  "It is true that the fact that an employee's speech touches on matters of public concern will not render that speech protected where the employee's motive for the speech is private and personal." Blum v. Schlegel, 18 F.3d 1005, 1012 (2d Cir. 1994).  "Additionally, the motive of the speaker must first be examined in order to determine whether the speech was calculated to redress personal grievances or whether it had a broader, public purpose."  Gardetto v. Mason, 100 F.3d 803, 812 (10th Cir. 1996).  "In reaching

14

this decision (i.e. whether the plaintiff's speech addresses a matter of public concern), the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." Curtis v. Oklahoma City Pub. Sch. Bd. Of Educ., 147 F.3d 1200, 1212 (10th Cir. 1998).

Again, Connick v. Myers is the cardinal case on the analysis of a speaker's motive. In Connick, the plaintiff Myers, an Assistant District Attorney, claimed that she was fired in retaliation for circulating a questionnaire in the DA's office in New Orleans. This questionnaire contained questions pertaining to the trust and confidence that co-workers possessed in various supervisors, and pertaining to the level of office morale. According to the Court, the plaintiff did not seek to inform the public that the elective office was not discharging its governmental responsibilities, nor did the plaintiff seek to bring to light actual or potential wrongdoing or breach of the public trust. The Court reasoned that because the focus of the questionnaire was not to evaluate the performance of the office, "***but rather to gather ammunition for another round of controversy with her superiors***," it was not protected. Connick at 148. (Emphasis provided) As the Court noted: "[t]hese questions reflect one employee's dissatisfaction with a transfer and an attempt to turn that displeasure into a cause celebre." Id. at 148.

The plaintiff's speech in the present matter is characterized by a comparable motive. The plaintiff's "advocacy" of certain students was not intended to bring to light actual or potential wrongdoing on the part of Griswold Middle School. As stated above, the plaintiff could not bring these matters to the attention of the public in the first place, as they concerned private student information, protected from disclosure by statute. Further, plaintiff never reported any mismanagement to the School Board or state Board of Education. She argued with colleagues about student placement. She

did not take the next step: publicizing her concerns in a more generalized manner. Like Myers, the plaintiff's inclusion of this speech in her complaint was motivated by her personal intellectual, and educational interests. The plaintiff is in truth seeking a de novo review of the decision to not renew her contract., under the guise of First Amendment jurisprudence. The Court should reject transparent attempts to circumvent the First Amendment into a more generalized public-sector labor protection.

### e. The plaintiff's claims may be decided upon a motion to dismiss.

The present matter stands on all fours with the decision in Berbas v. Board of Education of the City of Chicago, (N.D. Ill. 2000) (attached). In Berbas, the plaintiff, a first grade teacher, brought a retaliation suit against the board of education. The plaintiff had been assigned to teach six special education classes in an alcove in the school. She then filed a grievance with her local teacher's union, requesting either assignment to a larger classroom or a reduction in the number of her students. On the same day the grievance was filed, her principal replaced her with a substitute teacher and assigned her to teach science to all students in grades one through four. Berbas (attached).

The plaintiff brought suit, claiming that she had been transferred in retaliation for exercising her right to associate with a union. The defendant then moved to dismiss the claim. In examining her First Amendment claim, the court held that the plaintiff was not speaking as a citizen, but as an employee voicing a personal grievance, and granted the motion to dismiss. The court was particularly persuaded by the fact that context and form of the plaintiff's speech was limited to a private, grievance procedure. "Moreover, Berbas directed the grievance toward Anton (the principal). Berbas does not allege she attempted to raise her concerns with the greater public in any way. This decision to deliver the message in private supports an

16

inference *that the real concern is the employment relation and not a public concern.*" Berbas (attached); citing to Wales v. Board of Education of Community Unit School District 300, 120 F.3d 82, 84 (7th Cir. 1997) (Emphasis provided). See also Cliff v. Board of School Commissioners of the City of Indianapolis, 42 F.3d 403, 411 (7th Cir. 1995) (Where the court noted that the plaintiff was not attempting to call public attention to those matters because, "she limited her complaint to private conversations and to the collective grievance procedure."); see also Khuans v. School District 110, 123 F.3d 1010, 1016 (7th Cir. 1997) ("One good clue to the true nature of the plaintiff's speech was the person to whom her statements were made; she did not issue a public call to change, but instead complained to her supervisors.").

Like wise, the plaintiff's complaint in the present matter merely addresses the contents of private conversations between herself and her co-educators/supervisors as to certain students' eligibility for an academic program. The plaintiff's statements solely concern her personal, employment relationship with the defendant. As in Berbas, the plaintiff's statements were not made publicly "to raise awareness of matters of public concern but instead to vindicate her private rights..." Berbas (attached). The Court should follow the guidance supplied by Berbas, and dismiss the plaintiff's First Amendment claims.

### f.   The plaintiff has failed to assert a claim against the defendant based on the standard set by Monell v. Dep't of Soc. Servs.

In the alternative, the plaintiff has filed to assert a Monell claim against the defendant, Rocky Hill Board of Education. A municipality is subject to liability for the unconstitutional acts of its employees only in limited circumstances. Such liability cannot result from a theory of respondeat superior. Instead, it can be imposed only if the acts in question were carried out in execution of a government's policy or custom.

17

It is only when the execution of a municipality's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the municipality as an entity is responsible under § 1983." Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).

In order to successfully plead a claim against a municipality, pursuant to 42 U.S.C. § 1983, a plaintiff must follow the pleading requirements spelled out in Monell. First, the plaintiff must assert that "the alleged constitutional violation was caused by the entity's policy or custom." Mandell v. County of Suffolk, 316 F.3d 368, 385 (2nd Cir. 2003); citing to Monell at 694. "The policy or custom requirement... is intended simply to distinguish acts of the municipality from acts of its employees, in order that municipal liability be limited to conduct for which the municipality is actually responsible." Mandell at 385; citing to Dangler v. New York, 193 F.3d 130, 142 (2nd Cir. 1999). Second, the plaintiff must, in the alternative, show that the challenged action was directed by an official with final policymaking authority. "Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered." Mandell at 385.

In the present matter, the plaintiff has failed to assert a Monell claim. The plaintiff has brought suit against a municipal entity, the Rocky Hill Board of Education, for the Board's failure to renew her contract. (Pl.Comp.). Specifically, the plaintiff has asserted a claim under § 1983 in the First Count of her complaint. (Pl.Comp.). Nevertheless, the plaintiff has not alleged in her First Count that her termination was caused by a policy or custom of the Rocky Hill Board of Education. Nor has the plaintiff alleged that her termination was directed by an "official with final policymaking authority." In suits brought against boards of education, courts have held that final decision-making authority over a teacher's employment resides in the office of superintendent. Gerlinger v. Gleason, 160 F.3d 858, 866 (2nd Cir. 1998). The plaintiff

has not specifically identified the superintendent of Rocky Hill as being involved in the decision to not renew her contract. (Pl.Comp.) The plaintiff has failed to assert a Monell-style claim, and therefore has not set forth an actionable claim pursuant to 42 U.S.C. § 1983.

**2. The plaintiff has failed to allege a violation of the First Amendment and the corresponding provisions of the Connecticut State Constitution, pursuant to C.G.S. §31-51q.**

In the Second Count of her complaint, the plaintiff has reasserted her claim in the First Count under Connecticut General Statutes §31-51q, additionally invoking the corresponding provisions of the Connecticut State Constitution.  Connecticut courts have adopted the Connick v. Myers analysis, and the standard of review for First Amendment retaliation claims brought under § 1983, upon their review of corresponding claims brought under §31-51q.  See Sierra v. State, Superior Court, judicial district of Hartford, docket no. CV 00-0803588 (June 4, 2001, Beach, J.)(attached); Sobczak v. Meriden Board of Education, Superior Court, judicial district of New Haven, docket no. 419547 (October 6, 2000, Levin, J.) (attached).  As such, a plaintiff pleading under §31-51q, must also allege that the disputed speech involved a "public concern".  Accordingly, the defendant incorporates his legal arguments in the above section III. (A)1, sub-sections a. through e. of this brief, and requests that the plaintiff's Second Count be dismissed.

**B.      The Plaintiff Has Not Properly Set Forth A Claim Under Section 504 Of The Rehabilitation Act.**

In the Third Count of her complaint, the plaintiff attempts to set forth a retaliation claim under Section 504 of the Rehabilitation Act. Section 504 of the Rehabilitation Act provides in part:

> "No otherwise qualified individual with a disability... shall, solely by reason of her of his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..."

In order to state either a claim of discrimination or retaliation under Section 504, a plaintiff must first allege that she has a disability, as defined under Section 504 of the Rehabilitation Act. Weixel v. Board of Educ. Of City of New York, 287 F.3d 138, 146-47 (2nd Cir. 2002).

The plaintiff in the present matter has not alleged that she was retaliated against for either her disability, or for some protected activity that involved her disability. In fact, the plaintiff's complaint is completely devoid of any reference to a disability. (Pl.Comp.). The plaintiff has failed to properly state a claim under Section 504 of the Rehabilitation Act, and the defendants request that the Court dismiss the plaintiff's Third Count.

20

**C.**     **The Plaintiff May Not Bring A Claim Of Defamation Against The Defendant.**

**1.**     **The defendant is protected by governmental immunity.**

In the Fourth Count of her complaint the plaintiff attempts to state a common law claim of defamation against the defendant. The plaintiff claims that the defendant committed defamation when its two employees, Ms. Miller and Ms. Young, told Mr. Russo, an employee of the Glastonbury School District, that the Rocky Hill Board of Education "would not rehire the plaintiff" (Pl.Comp. ¶¶ 48, 49), in response to Mr. Russo's questions, concerning the plaintiff, during a reference check. Common-law defamation is an intentional tort. The plaintiff may not assert this claim, as the defendant Rocky Hill Board of Education, is a municipal entity, and municipal entities may not be held liable for the intentional torts of their employees.

The defendant is shielded from liability by the defense of governmental immunity. "A municipality itself was generally immune from liability for its tortious acts at common law…" Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 165, 544 A.2d 1185 (1988). The general rule developed in the case law is that a municipality is immune from liability unless the legislature has enacted a statute abrogating that immunity. Williams v. New Haven, 243 Conn. 763, 766-67, 707 A.2d 1251 (1998). "Statutes that abrogate or modify governmental immunity are to be strictly construed… This rule of construction stems from the basic principle that when a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified or enlarged in its scope by the mechanics of construction…" Rawling v. New Haven, 206 Conn. 100, 105, 537 A.2d 439 (1988).

21

"The legislature has set forth general principles of municipal liability and immunity in General Statutes § 52-557n." Williams v. New Haven, at 767. "Section 52-557n abrogates the common-law rule of governmental immunity and sets forth the circumstances in which a municipality is liable for damages to person or property. These circumstances include the negligent acts or omissions of the political subdivision or its employees or agents, ... The section goes on to exclude liability for acts or omissions of any employee or agent which constitute criminal conduct, fraud, actual malice or willful misconduct and negligent acts that involve the exercise of judgment or discretion." Tryon v. North Branford, 58 Conn. App. 702, 720-21, 755 A.2d 317 (2000).

Accordingly, Connecticut has held that a municipality may not be held liable for its employees' alleged acts of defamation. In Sammartino v. Turn, Superior Court, judicial district of Tolland at Rockville, docket no. CV 99-070151 (February 28, 2003, J., Scholl) (See attached), the plaintiff sued the defendant, Edward Turn, in his official capacity as First Selectman for slander. The court held that the defendant was shielded by the defense of governmental immunity:

> "It is true that governmental immunity would not shield an individual sued in that capacity (i.e., individual capacity) for an intentional tort. Here Turn is not sued individually but in as much as he occupies the office of First Selectman. Since a town, like the state, can only act through its officers and employees a suit against a municipal official in his capacity as such is a suit against the town. Thus the principles of governmental immunity apply to both Turn and the town, even as to a claim of slander. That immunity, however, continues to shield the town and town officials since **by statute the town is not liable directly for the intentional torts of its officials or employees.**" Id. (Emphasis provided).

See also McKiernan v. Amento, Superior Court, judicial district of New Haven at New Haven, docket no. CV 01-0453718 (October 2, 2003, J., Gilard) (Where the plaintiff

brought suit against the Town of Hamden for defamation, the Court granted the defendant's motion for summary judgment, holding that § 52-557n(a)(2)(A) specifically exempted the Town of Hamden from liability for the intentional misconduct of its employees) (attached).

Like wise, the defendant in the present suit is equally immune. The plaintiff has brought suit directly against a municipal entity, the Rocky Hill Board of Education. The plaintiff alleges in her complaint that the defendant is directly liable for acts of defamation committed by two of its employees. Moreover, it is also important to note that the plaintiff has not even attempted to abrogate the defendant's immunity by pleading Connecticut General Statutes § 52-557n. Regardless §52-557n, as well as Connecticut common law dictates that the defendant may not be held directly liable for the intentional torts of its employees.

### 2. The plaintiff has failed to allege that Ms. Miller's and Ms. Young's statements were made with actual malice.

In the alternative, the plaintiff has not set forth a claim of defamation as she has failed to make a showing of "actual malice". Courts have held that the question of "actual malice" is appropriate for review upon a motion to dismiss. See Church of Scientology International v. Behar, 238 F.3d 168, 177 (2nd Cir. 2001) (where Court of Appeals dismissed plaintiff's complaint for failure to set forth actual malice.). See also P.G. v. Ramsey County (Minn. 2001) (Where the Court granted the defendant's motion to dismiss, holding that the plaintiff had failed to set forth allegations of actual malice in her complaint).

Courts have held that there exists a qualified privilege protecting an employer's communication to employees and to other interested parties concerning

the reason for the employee's discharge.  For example, in <u>Hollman v. Baldwin Union Free School District</u>, 320 F.3d 164 (2nd Cir. 2003), the plaintiff, a guidance counselor and Spanish teacher employed by the Baldwin Union Free School District, sued her supervisors and fellow-employees for defamation.  Specifically, the statements in question were made by the plaintiff's principal, Hollman, to the Baldwin Superintendent.  These statements concerned the plaintiff's ability to carry out her professional duties.  <u>Hollman</u> at 169.

The <u>Hollman</u> court held that "because Hollman is an official of Baldwin, he had a qualified privilege to make a bona fide communication upon a subject in which he had an interest, or a legal, moral, or social duty to speak, where the communication was made to a person having a ***corresponding interest or duty***."  <u>Hollman</u> at 169; citing to <u>Santavicca v. City of Yonkers</u>, 518 N.Y.S.2d 29, 31 (App.Div.2d Dep't 1987). The Hollman court proceeded to hold that the plaintiff therefore had the burden to show "actual malice": "[b]ecause Hollman had a qualified privilege to speak, it was Peter's (the plaintiff's) burden to show that Hollman's statements were either made with 'spite or ill will' or 'with a high degree of awareness of their probable falsity'." <u>Hollman</u> at 169-170; see <u>Liberman v. Gelstein</u>, 80 N.Y.2d 429, 437-39 (1992).

In the <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254 (1964), the Supreme Court held that, "for a public official to succeed in a defamation suit, the First Amendment requires that he or she first establish with '***convincing clarity***' that the defendant published a defamatory falsehood with actual malice." <u>Id</u>. at 285-86 (Emphasis provided).  The Supreme Court has interpreted the term "actual malice" to "require proof that the defendant published a statement with knowledge of its falsity or with a high degree of awareness of the publication's probable falsity," <u>Garrison v. Louisiana</u>, 379 U.S. 64, 74 (1964), or "while the defendant in fact entertained serious doubts as to the truth of the publication." <u>St. Amant v. Thompson</u>, 390 U.S. 727, 731

(1968). See also <u>Gertz v. Robert Welch Inc.</u>, 418 U.S. 323, 335 & n. 6 (1974) (requiring proof of "subjective awareness of probable falsity"). "[T]here is a critical difference between not knowing whether something is true and being highly aware that it is probably false." <u>Liberman</u>, supra at 438.

The present matter is equally ripe for decision upon a motion to dismiss. As in <u>Hollman</u>, the plaintiff is claiming that statements concerning her employment as a Special Education teacher in a public institution constitute defamation. Such statements were allegedly made when Mr. Russo, a public school principal, questioned another public school principal and a public school director of Special Education during a reference check. The alleged communication concerned the plaintiff's employment in the public school system as a special education teacher. Both the recipient and conveyors of the statement were public school principals and/or administrators, and as such had an interest and/or duty to hire public school educators. Ms. Miller and Ms. Young clearly had a qualified privilege to make a bona fide communication upon a subject in which they had an interest, or a legal, moral or social duty to speak, where the communication was made to a person having a *corresponding interest or duty*." <u>Hollman</u> at 169; citing to <u>Santavicca v. City of Yonkers</u>, 518 N.Y.S.2d 29, 31 (App.Div.2d Dep't 1987).

Specifically, the plaintiff has stated that the defamation consists of two identical remarks, respectively made by both Ms. Miller and Ms. Young, that the Rocky Hill school district "would not rehire the plaintiff". (Pl.Comp. ¶¶ 48, 49). As in <u>P.G. v. Ramsey County</u>, the plaintiff has failed to set forth any allegations of actual malice in her complaint. The plaintiff has not alleged in her complaint that Ms. Miller and Ms. Young made this statement with 'knowledge of its falsity or with a high degree of awareness of the publication's probable falsity'.

25

Furthermore, though the plaintiff does allege that the statements were false (Pl.Comp. ¶ 58), previous allegations in the plaintiff's complaint contradict this allegation. The plaintiff also alleges that during the March 15, 2002 meeting her contract was not renewed and she was told that she would not be permitted to transfer to another school within the Rocky Hill district. (Pl.Comp. ¶ 29). The alleged defamatory remarks were made in February 2003. There is no evidence that defendant intended to rehire the plaintiff. The statements made at the March 15, 2002 meeting were perfectly consistent with Ms. Miller and Ms. Young's statements in February 2003; that the Rocky Hill Board of Education was not going to retain the plaintiff at another school in the district.

**D.** **The Plaintiff Has Failed To State A Claim For False Light – Invasion Of Privacy.**

The plaintiff has also asserted a claim under the separate Tort cause of action – false light invasion of privacy, under the Fourth Count of her complaint. "In examining the false light tort, we turn to section 652E of the Restatement (2d) of Torts that provides: "one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Lerman v. Flynt Distributing Co., Inc., 745 F.2d 123, 135 (2nd Cir. 1984).

**1. The plaintiff has failed to allege the necessary element of "publication".**

The primary and essential element in a false light claim is the element of "publication". The plaintiff's false light invasion of privacy claim fails to allege "publication". To satisfy the element of publication under an invasion of privacy by false light claim, the plaintiff must show that "the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge... thus it is not an invasion of the right of privacy... to communicate a fact concerning the plaintiff's private life **to a single person or even to a small group of persons**." <u>Walters v. Homestaff Health Care</u>, Superior Court, judicial district of Stamford/Norwalk at Stamford, docket no. CV 95-0146961 (February 8, 1996, Tobin, J.) (granting the defendant's motion to strike the plaintiff's false light claim for lack of 'publication'.)(attached); citing to <u>McGrath v. The Yale Corporation</u>, Superior Court, judicial district of New Haven at New Haven, docket no. 326144 (May 17, 1993, Thompson, J.) (attached) (Emphasis provided).

In the present matter the plaintiff's false light invasion of privacy claim is based on two allegations: (1) that Ms. Miller told Mr. Russo that the defendant "would not rehire the plaintiff" (Pl.Comp. ¶ 48); and (2) that Ms. Young told Mr. Russo that the defendant "would not rehire the plaintiff" (Pl.Comp. ¶ 49). The plaintiff has completely failed to allege that the subject statements were communicated to the public at large, or to so many persons "that the matter must be regarded as substantially certain to become one of public knowledge." Rather, the plaintiff has only alleged that the statements were made to *ONE* individual, within the context of a private phone conversation. The plaintiff has failed to set forth a claim of false light invasion of privacy.

**2. The defendant is protected by the defense of government immunity.**

In the alternative the defendant is protected by the defense of government immunity. Like defamation, false light is an intentional tort. The plaintiff has brought this claim directly against a municipal entity – the Rocky Hill Board of Education. The alleged acts of false light involve two statements made by two employees of the defendant. By common law and statute, a town may not be held directly liable for the intentional torts of its employees (see above legal argument in Section III, C (1)). Incorporating its arguments in Section III, C(1) of this brief, the defendant moves to dismiss the plaintiff's false light claim.

**E.    The plaintiff May Not Bring A Claim Under C.G.S. §§ 31-128f.**

The plaintiff also claims in her Fourth Count that Ms. Young's and Ms. Miller's statements violate Connecticut General Statutes §§ 31-128f. Section 31-128f reads in relevant part: "No individually identifiable information contained in the personnel file or medical records of any employee shall be disclosed by an employer to any person or entity not employed by or affiliated with the employer without the written authorization of such employee…"

**1.    Section 31-128f does not apply to public employees.**

The plaintiff may not assert a claim under § 31-128f as it does not protect *public* employees. Section 31-128a, "Definitions", defines an "employer" as, "an individual, corporation, partnership or unincorporated association." Reference to public bodies, such as a board of education, is noticeably absent from this definition. Courts have

28

therefore ruled that §31-128f does not apply to public employees like the plaintiff in the present matter.  See City of Bridgeport v. Bridgeport Police, Superior Court, judicial district of Fairfield at Bridgeport, docket no. CV 93-0307435 (January 4, 1995, McWeeney, J.) (attached) (where the court held that the City's argument that § 31-128f precludes disclosure of police officer personnel records fails as §31-128f does not apply to public employees).

**2.      The plaintiff fails to set forth allegations, sufficient to bring a claim under § 31-128f.**

In the alternative, the plaintiff fails to set forth a claim under § 31-128f.  In order to state a claim under § 31-128f, the plaintiff must spell out what "individually identifiable information" contained in the plaintiff's personnel file was disclosed.  It is not enough to merely include the boilerplate language, "individually identifiable information", in the complaint.  The plaintiff must actually point to those specific items of information which were allegedly disclosed.  See Torok v. Proof, Superior Court, judicial district of Stamford/Norwalk at Stamford, docket no. CV 90-0113204 (February 2, 1993, Lewis, J.) (attached) (where court granted the defendant's motion to strike as the plaintiff failed to state what "individually identifiable information" contained in the plaintiff's personnel file was disclosed).

The plaintiff's complaint in the present matter is equally devoid of detail.  The plaintiff does not set forth what "individually identifiable information" was disclosed from her personnel file.  The plaintiff does not even allege that the defendant's alleged disclosure involved her personnel file.  Rather, the plaintiff's allegations merely consist of Ms. Miller's and Ms. Young's comment to Mr. Russo that the defendant "would not rehire the plaintiff".  (Pl.Comp. ¶¶ 48, 49).

29

**F.    The Plaintiff Has Failed To State A Claim Of Wrongful Discharge.**

In the Fifth Count of her complaint, the plaintiff has attempted to set forth an additional claim under the common-law theory of wrongful discharge.  The defendant now moves to dismiss this claim as: (1) the plaintiff has failed to satisfy the technical pleading requirement of alleging a specific, public policy violated by her "termination"; and (2) the law in the state of Connecticut with respect to the common-law cause of action for wrongful discharge is not well-settled and is a matter "more appropriately left for decision by the state courts." Koehler v. Chesebrough-Ponds Inc., 705 F.Supp. 721, 724 (D.Conn. 1988).

**1. The plaintiff has failed to specifically identify a public policy, defined by statute.**

Under Connecticut law, an at-will employee may sue her employer for wrongful discharge in violation of the implied covenants of good faith and fair dealing only if the reason for the discharge violates an important public policy. Sheets v. Teddy's Frosted Foods, Inc., 427 A.2d 385, 386-87 (Conn. 1980).  Sheets' progeny have further defined this required showing of a public policy violation as a technical pleading requirement, necessary for any successful pleading of the common law action.  It is not enough that the plaintiff has set-forth a boiler-plate allegation in her complaint, stating that the defendant's actions have "violated public policy."  Rather, the plaintiff must point to some specifically defined public policy, as invoked and embodied in statute.  See Morris v. Hartford Courant Co., 200 Conn. 676, 679, 513 A.2d 66 (1986); Carbone v. Atlantic Richfield Co., 204 Conn. 460, 467, 528 A.2d 1137 (1987); Burns v.

Preston Trucking Co., 621 F.Supp. 366 (D.Conn. 1985) (no cause of action where no statute was invoked and no clear mandate of public policy was cited).

Failure to meet this technical pleading requirement is fatal to the plaintiff's claim. See Seery v. Yale-New Haven Hosp., 17 Conn.App. 532, 543, 554 A.2d 757 (1989) (the failure of plaintiff to demonstrate a public-policy violation requires a directed verdict for the defendant). Accordingly, failure to plead a specific public policy merits dismissal. "To avoid dismissal, a plaintiff must plead in the complaint the public policy allegedly violated by the employment termination. Failure to meet this technical pleading requirement results in the dismissal of the wrongful-discharge claim." Siegel, O'Conner, Schiff & Zangari, Connecticut Labor & Employment Law 209 (1995) (collected cases).

In the present matter, the plaintiff has failed to identify a specific public policy, as enumerated by statute, in her complaint. Rather, the plaintiff merely states that: "[t]he defendant retaliated against the against the plaintiff because of actions she took in furtherance of state and federal public policy." (Pl.Comp. ¶ 61). The plaintiff has not specifically identified the "state and federal public policy", by either name or by content, which she blankly refers to in her complaint.

The plaintiff's Fifth Count incorporates by reference those allegations set forth in ¶¶ 1-34 of her complaint. As such, the factual basis of the plaintiff's Fifth Count is the same as that of her First and Second Counts; claiming that she was terminated in retaliation for internal disagreement, with her co-educators and supervisors, over the placement of specific students in the BRACES program. The plaintiff is attempting to allege that her termination was based upon these disputes over student placement, and that such termination therefore violates public policy. (Pl.Comp.). The plaintiff has not identified, nor is the defendant aware of any public policy, which specifically disallows public educators and/or administrators from disagreeing with their fellow

31

teachers over the placement of certain students into educational programs.  See
Stadnick v. Kimberly-Clark Corp., 15 Conn. L. Trib. No. 14 at 28 (D.Conn. Nov. 16,
1988) (discipline based on employee fight with supervisor does not violate public
policy).  The plaintiff has failed to meet the pleading requirements of an action
sounding in wrongful discharge.

### 2. The plaintiff may not cite to 20 U.S.C. § 1400 et. seq., in support of her wrongful discharge claim.

In order to compensate for her failure to meet the technical pleading
requirement of an action for wrongful discharge, the plaintiff may attempt to argue that
her termination violates the public policy embodied in 20 U.S.C. § 1400 et. seq., the
Individual with Disabilities Education Act ("IDEA").  In paragraph 13 of her complaint,
the plaintiff alleges that her advocacy/recommendation on behalf of certain students
"was consistent with one of the objectives of the... (IDEA)..."  However, the plaintiff
still fails to plead a public policy violation as the policy set forth in the IDEA does not
apply to the facts of the present matter.

Courts have ruled that in order "to rely on such a statute in support of a
common law action for wrongful termination, *an employee must be a member of the
class of persons that the specified public policy was designed to protect*." Dray
v. New Market Poultry Prods., Inc., 258 Va. 187, 191-92, 518 S.E.2d 312, 314 (1999)
(Emphasis provided).  Section 1412 (a)(15)(C) of the IDEA identifies "children with
disabilities" as the relevant class of persons, which the IDEA was designed to protect:

"…a State may adopt a policy that includes a requirement that local educational agencies in the State make an ongoing good-faith effort to recruit and hire appropriately and adequately trained personnel to provide special education and related services to ***children with disabilities***…" (Emphasis provided).

The IDEA was not designed to protect public educators, but rather their students; specifically, "children with disabilities." The plaintiff is not a member of the class of persons, which the policy provisions within the IDEA were designed to protect. The plaintiff may not rely on the IDEA in support of her common law action for wrongful termination. As such, the plaintiff fails to allege that her termination violated a public policy, and therefore has not provided a legal basis for her Fifth Count.

### 3. This Court lacks pendant jurisdiction over the plaintiff's common-law claim of wrongful discharge.

In the alternative, the plaintiff may not bring an action for wrongful discharge, as created by Connecticut common law, in federal court. The law in the state of Connecticut with respect to wrongful discharge is not well settled and is a matter "more appropriately left for decision by the state courts." Koehler v. Chesebrough-Ponds Inc., 705 F.Supp. 721, 724 (D.Conn. 1988). The defendant therefore requests that this Court dismiss the plaintiff's Fifth Count for lack of pendent jurisdiction.

## IV.   <u>CONCLUSION</u>

WHEREFORE, for the aforementioned reasons, the defendant requests that the First, Second, Third, Fourth, and Fifth Counts of the plaintiff's complaint be dismissed.

DEFENDANT,
ROCKY HILL BOARD OF EDUCATION

By_____
Eric D. Eddy [ct25242]
Michael J. Rose [ct14803]
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114
Phone:  (860) 249-1361
Fax:  (860) 249-7665
E-Mail:  eeddy@hl-law.com
E-Mail:  mrose@hl-law.com

34

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 4th day of February, 2004.

Gary Phelan, Esquire
Tanya Wolanic, Esquire
Klebanoff & Phelan, P.C.
433 South Main Street, Suite 117
West Hartford, CT  06110


_____
Eric D. Eddy