```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

LINDA STURM,                         :
                                     :
            Plaintiff,               :    CASE NO.  3:03CV666 (AWT)
v.                                   :
                                     :
ROCKY HILL BOARD OF EDUCATION,       :
                                     :
            Defendant.               :
```

**<u>RULING ON MOTION TO DISMISS</u>**

The plaintiff, Linda Sturm, was employed by the defendant as a special education teacher at Griswold Middle School in Rocky Hill, Connecticut.  She alleges that her efforts on behalf of certain students led to both the defendant's failure to renew her contract and her resignation. The defendant has filed a motion to dismiss all five counts of the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons set forth below, the motion to dismiss is being granted in part and denied in part.

I.   <u>Background</u>

The court accepts as true the following allegations taken from the Complaint.  In September of 1998, the plaintiff was hired as a special education resource teacher at Griswold Middle School.  The school offered a structured program called BRACES (Behavior, Rewards, Achievement, Consequences, Encouragement and Support).  BRACES was designed to improve student behavior and cooperativeness while decreasing disrespectfulness, inappropriate language and failures to complete class assignments. (Compl. ¶ 10.)

Throughout her tenure, the plaintiff recommended that several of her students be placed in the BRACES program and attempted to have some of her students "mainstreamed" into regular classrooms. (Compl. ¶ 12.) She believed such actions were consistent with the purposes of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 (the "IDEA"). (Compl. ¶ 13.) Specifically, the plaintiff alleges she recommended eight students for placement into the BRACES program (Compl. ¶¶ 14-21), advocated for the mainstreaming of one student (Compl. ¶ 22), refused to agree to a "trade" that would have substituted one student for another into the BRACES program (Compl. ¶ 24), and asked for the separation of four "troublesome" female students (Compl. ¶ 25).

In March of 2003, the plaintiff was told her contract would not be renewed and was allowed to resign rather than appear on a list of "non-renewals". (Compl. ¶ 29.) At the end of the 2001-2002 school year, the plaintiff's resignation became effective. She subsequently applied for a position as a part-time special education teacher in the Glastonbury School District, but was not hired. She alleges two of the defendant's employees, Carey Miller and Ruth Young, intentionally and maliciously told an official of the Glastonbury School District that the defendant would not rehire the plaintiff. (Compl. ¶¶ 48-50.)

II.  <u>Legal Standard</u>

When deciding a motion to dismiss under Fed R. Civ. P. 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff.  See <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>see also</u> <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  <u>Mytych v. May Dep't Stores Co.</u>, 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting <u>Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.</u>, 748 F.2d 774, 779 (2d Cir.1984)).  "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims."  <u>United States v. Yale New Haven Hosp.</u>, 727 F. Supp. 784, 786 (D. Conn. 1990) (citing <u>Scheuer</u>, 416 U.S. at 232).

III. <u>Discussion</u>

   A.  <u>42 U.S.C. § 1983</u>

The plaintiff alleges the defendant violated her First Amendment rights under 42 U.S.C. § 1983 by refusing to renew her contract because of her recommendations regarding student placement. The defendant seeks to dismiss this count of the Complaint on the grounds that the plaintiff's speech did not involve a matter of public concern. <u>See</u> <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983).

Whether speech addresses a matter of public concern in the employment context is determined by the content, form and context of the statements in question, "as revealed by the whole record." <u>See</u> <u>id.</u> at 147-48. Speech by an employee regarding a matter of pure personal interest is generally not protected under First Amendment retaliation law. <u>See</u> <u>Bernheim v. Litt</u>, 79 F.3d 318, 324 (2d Cir. 1996)(quoting <u>Connick</u>, 461 U.S. at 147). However, a statement does not lose First Amendment protection "simply because the speech is communicated privately to the employer rather than to the public." <u>Gihvan v. W. Line Consol. Sch. Dist.</u>, 439 U.S. 410, 415-16 (1979).

Here, the plaintiff communicated exclusively with other school officials about specific issues in specific cases. She alleges her efforts were a form of "advocacy" on behalf of her pupils. As such, her statements served to advance the federally

4

legislated goal of integration of disabled students into regular classrooms.  (Compl. ¶ 13.)  Based on the "whole record," established at this point in the proceedings exclusively by the complaint, the plaintiff potentially could demonstrate that the form, context and content of her statements sufficiently concerned a matter of public interest.  Such a showing is sufficient to defeat a motion to dismiss.

The defendant also seeks to dismiss the plaintiff's § 1983 claim due to her failure to allege either a specific policy or practice, or that the challenged action was directed by an official with final policymaking authority.  See Mandell v. County of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003).  The plaintiff challenges the retaliatory employment decisions made by the board through the district superintendent.  Such an allegation could provide a sufficient basis for holding the defendant liable in this case.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986); Mandell, 316 F.3d at 385.

Accordingly, the motion to dismiss is being denied with respect to the first count of the complaint.

    B.   Conn. Gen. Stat. § 31-51q

The plaintiff also brings a retaliation claim under Conn. Gen. Stat. § 31-51q, invoking the protection of the First Amendment of the Constitution and article first, section four of

5

the Connecticut constitution. The defendant seeks to dismiss this count, again arguing that the speech involved is not a matter of public concern. Connecticut courts have applied federal First Amendment analysis to federal and state retaliation claims made under Conn. Gen. Stat. § 31-51q. See <u>Daley v. Aetna Life & Cas. Co.</u>, 249 Conn. 766 (1999)(using federal "public concern" analysis to evaluate § 31-51q claim that invoked First Amendment and Conn. Const. art. I, § 4). For the same reasons as the first count of the complaint, the motion to dismiss is being denied as to the plaintiff's state law retaliation claim.

 C. <u>Rehabilitation Act</u>

The plaintiff claims the alleged retaliation also violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. That statute protects a qualified individual with a disability from discrimination "solely by reason of her or his disability." 29 U.S.C.A. § 794(a) (West 1999 & Supp. 2004). The defendant argues the plaintiff has alleged no disability under the Rehabilitation Act, and therefore cannot avail herself of the Act's protection against retaliation. Construing the complaint in the light most favorable to the plaintiff, she claims she was coerced to resign because of her efforts on behalf of her students, who are "qualified individuals" under the Act. Under her theory, the Act prohibited the defendant from retaliating against her for attempting to protect the rights of her disabled students.

Section 504 of the Rehabilitation Act expressly incorporates the anti-retaliation provision of Section 503 of the Americans with Disabilities Act, 42 U.S.C. § 12203.  See 29 U.S.C.A. § 794(d).  That provision prohibits retaliation against "any individual" because he or she opposes any act or practice made unlawful by the act.  42 U.S.C.A. § 12203 (West 1995 & Supp. 2004) (emphasis added).  Courts have extended protection against retaliation under the Rehabilitation Act to those who advocate on behalf of the disabled.  See, e.g., Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 149 (2d Cir. 2002) (threat to report disabled child's mother to authorities due to her efforts to obtain home schooling for child was example of retaliatory conduct); Weber ex rel. Samuel M. v. Cranston Sch. Comm., 212 F.3d 41, 49 (1st Cir. 2000) (Congress failed to limit the retaliation provision of the Rehabilitation Act "in apparent recognition of the fact that disabled individuals may need assistance in vindicating their rights from individuals who may have their own claim to relief under the Act"); Lillbask ex rel. Mauclaire v. Sergi, 193 F.Supp.2d 503, 515 (D. Conn. 2002) (Rehabilitation Act "has been construed on behalf of disabled people to include those on whom they depend to vindicate their rights") (citation omitted).  Because the plaintiff has standing to claim retaliation based on her efforts on behalf of her students, the motion to dismiss is being denied with respect to the third count of the complaint.

7

D.   Defamation/False Light

In the fourth count of the complaint, the plaintiff alleges the statements of Ms. Miller and Ms. Young concerning the defendant's unwillingness to rehire Ms. Sturm were either defamatory or invaded her privacy by placing her in a false light.[1]  The plaintiff specifically and exclusively alleges that the statements were intentional and malicious.  The defendant correctly argues that as a municipal entity, it is immune from liability for the intentional torts of its employees under Conn. Gen. Stat. § 52-557n(a)(2).[2]  See Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 199 (D. Conn. 2000).  Accordingly, the motion to dismiss is being granted as to the fourth count of the complaint.

E.   Wrongful Discharge

The plaintiff argues that the defendant is also liable for wrongful discharge under Connecticut law.  In order to state a claim for wrongful discharge under Connecticut law, a plaintiff

---

[1] Where defamation and false light claims arise from a single set of statements, "plaintiff can proceed upon either theory, or both, although he may have but one recovery for a single instance of publicity."  Restatement (Second), Torts § 652E (1976); see also Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 131 (1982) (incorporating false light claim of the Restatement into Connecticut law).

[2] "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to persons or property caused by: (A) Acts or omissions of any employee which constitute criminal conduct, fraud, actual malice or willful misconduct . . . ."  Conn. Gen. Stat § 52-557n (a)(2)(A)(2).  The plaintiff has cited no other statutory grounds for waiver of immunity.

must identify an "important and clearly articulated public policy."  See Thibodeau v. Design Group One Architects, LLC, 260 Conn. 691, 701 (2002).  The statutory remedy under Conn. Gen. Stat. § 31-51q, invoked by the plaintiff here in the second count of the complaint, precludes her from bringing a common-law wrongful discharge action based on the policy articulated by that statute.  See Burnham v. Karl and Gelb, P.C., 252 Conn 153, 161-62 (2000).

   The plaintiff also cites the IDEA as a potential source of public policy, but does not allege that she is protected by the statute.  The Connecticut Supreme Court has held that a plaintiff who is not entitled to protection under a statute "cannot use the public policy embodied therein to support her claim of wrongful discharge based upon a violation of public policy."  Burnham, 252 Conn. at 182-83; see also Thibodeau, 260 Conn. at 706-07 (holding that plaintiff could not invoke public policy against sex discrimination in wrongful discharge action where defendants were specifically exempted from Fair Employment Practices Act).

   The plaintiff cites no authority to support her assertion that there is a "judicially conceived notion of public policy" capable of supporting a wrongful termination claim in this case.  Id. at 699.  The public policy exception to the general rule allowing unrestricted termination of an at-will employment relationship is "a narrow one."  Parsons v. United Techs. Corp.,

9

243 Conn. 66, 79 (1997). Connecticut courts have been reluctant to expand the scope of the exception absent a specific pleading of public policy. See Thibodeau, 260 Conn. at 701 (listing cases where court rejected wrongful discharge claims for failure to meet public policy requirement). Because the plaintiff has failed to make a showing that there is a clearly articulated public policy, the motion is being granted with respect to the fifth count of the complaint.

IV. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss [Doc. # 15] is hereby DENIED with respect counts one, two and three of the Complaint and hereby GRANTED with respect to counts four and five of the Complaint.

So ordered.

Dated this 29th day of March 2005, at Hartford, Connecticut.

/s/

Alvin W. Thompson
United States District Judge